IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-41161

_____

PATRICK F. ROGERS,

Petitioner-Appellant,

versus

WAYNE SCOTT,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

November 21, 1995

Before GARWOOD, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Patrick F. Rogers was sentenced to death for the murder of a police officer by a state district court in Texas upon affirmative answers to the required interrogatories. The complete facts of the crime and the procedural history of this case are set out in the thorough opinion of the United States District Court explaining its order dismissing Rogers' petition and denying a certificate of probable cause. See Rogers v. Director, 864 F. Supp. 584 (E.D. Tex. 1994). We will not tell the tale again. We pause only to note that there is no question in this case about the sufficiency of the evidence. Rogers does not deny shooting the officer six times while the officer sat in the police car with his pistol in

its holster, nor does he deny participating in a crime spree of which the killing was a part. We grant a certificate of probable cause and affirm the order dismissing Rogers' petition, his first federal habeas petition.

## I.

Rogers presented twenty-nine claims for relief to the federal district court and thirty issues, each of which, it is urged, supports a certificate of probable cause. The district court reviewed each of the claims and rejected all of them on their merits. It also found that all but Claim One, a _Penry_ claim to which we will turn shortly, were barred from review because they rested upon an independent and adequate state ground. Specifically, Henry Braswell, Judge of the 6th Judicial District Court of Lamar County, Texas, filed detailed findings of fact and conclusions of law on October 14, 1990. Judge Braswell found a procedural bar to all claims because Rogers either failed to lodge a contemporaneous objection or failed to assert the issue on direct appeal. The Texas Court of Criminal Appeals affirmed on the basis of these findings except for Conclusions of Law Nos. 2, 3, and 8. Conclusion No. 2 held that state constitutional violations were not cognizable in a post-conviction writ brought pursuant to Tex. Code. Crim. Proc. Ann. Art. 11.07. Conclusion Nos. 3 and 8 found a procedural bar to Rogers' _Penry_ claim that the punishment interrogatories did not allow the jury to give full effect to his mitigating evidence. We turn first to the procedural bar urged by

2

the State as an independent state law ground for rejecting all but Claim One of Rogers claims.

Rogers urges that the courts below erred in sustaining a procedural bar because Texas has not consistently invoked it. Rather, Texas has, the argument continues, in "over two dozen published cases over the past two decades . . . waived or ignored the contemporaneous objection rule." Blue Brief at 28. Relatedly, Rogers argues that Tex. R. App. P. 52(a) is not an adequate state law ground because it is "purely" discretionary. Rogers argues that the Texas Court of Criminal Appeals has not "identified any particular type of claims for which relaxation of the contemporaneous objection rule would be appropriate." Blue Brief at 30.

Our analysis of the assertion that Texas has applied its contemporaneous objection rule erratically is informed by two principles. First, "[a] state court need not fear reaching the merits of a federal claim in an <u>alternative</u> holding. . . . In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity." <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989). Second, "an occasional act of grace by the Texas court in entertaining the merits of a claim that might have been viewed as waived by procedural default [does not] constitute such a failure to strictly or regularly follow the State's contemporaneous objection rule as permits us to disregard that rule generally, or where the state court has not done so." <u>Bass v. Estelle</u>, 705 F.2d 121, 122-23 (5th Cir.), <u>cert. denied</u>, 464

3

U.S. 865 (1983). The Texas cases, viewed against these two principles, fail to support Rogers' contention. The State notes that, in the vast majority of the cases pointed to by Rogers, the Texas Court of Criminal Appeals first denied relief on the basis of procedural default and then observed that there was no error. Amos v. State, 61 F.3d 333, 339-45 (5th Cir. 1995).

We agree and find no tension with notions of federalism in this circumstance. There is no suggestion that, to defeat federal interests, Texas selectively invokes its interest in timely objections to trial rulings. We find no tie between reliance upon the procedural bar and the merit of the unreached federal claim. To the contrary, the "alternative" rulings that the barred federal claims also lack merit suggest the opposite. It would make little sense to chide a state for explaining that a barred claim lacked merit. Explanation by the State preserves the State's interest while documenting how often a procedural bar was the sole cause of denied relief.

## II.

In his Claim One, Rogers asserts that the jury was unable to give effect to his mitigating evidence, contrary to the teaching of Penry v. Lynaugh, 492 U.S. 302 (1989). Rogers' mother testified that he had been a good child but began to experiment with drugs at age 16. There was evidence regarding Rogers' drug use, including testimony of his taking liquid phencyclidine or PCP some time shortly before the murder. Dr. Gary Byrd, a psychiatrist, testified that Rogers had a history of drug abuse. Dr. Byrd

4

explained that PCP can cause serious side effects:  "[A]n individual will behave or carry on their activities in an illogical manner and in a manner in which they are detached from reality and the person will act as if they are unaware of the consequences of what they do."  He testified that Rogers had used a large amount of PCP in the trip from Oklahoma to Paris, Texas, where Rogers killed the police officer.  Dr. Byrd opined that Rogers' inability "to rationalize about" the incident was due to a serious mental defect. Other witnesses gave similar testimony regarding Rogers' use of drugs and his associated bizarre behavior.

This aspect of Rogers' Penry claim is easily rejected.  The jury could have given some effect to the evidence in answering the questions of deliberateness and of the probability that he would constitute a continuing threat to society.  Cordova v. Collins, 953 F.2d 167 (5th Cir.), cert. denied, 502 U.S. 1067 (1992).  No more is required.  Rogers made no objection at trial regarding this perceived weakness of the interrogatories.  Texas, moreover, rejected this contention on its merits and did not invoke a procedural bar.  See Black v. State, 816 S.W.2d 350 (Tex. Crim. App. 1988).

On the other hand, Texas did insist on its rule that a petitioner must proffer mitigating evidence that he would have offered to preserve a contention that, because the mitigating evidence was also hurtful to his cause, its "double-edged" character prevented its use, a frustration laid at the feet of the Texas form of interrogatories submitted at the sentencing phase of

5

capital cases. Texas has invoked its contemporaneous objection rule to this wing of Rogers' <u>Penry</u> argument, and we are offered no legal basis for disregarding it.

III.

Rogers in Claim Two contends that, at sentencing, the only jury instruction regarding mitigation related to his defense of temporary insanity caused by intoxication. The jury was instructed in accordance with Texas Penal Code Sections 8.01 and 8.04 as follows (emphasis added):

> Evidence of the defendant's temporary insanity, if any, caused by intoxication, whether voluntarily induced or not, <u>may be considered by the jury in mitigation of the penalty attached to the offense for which the defendant has been convicted</u>.

> Insanity, as used in this phase of the case, means that the actor, as a result of intoxication, did not know that his conduct was wrong.

> "Intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

> Therefore, if you believe from the evidence that the defendant, Patrick F. Rogers, was at the time of the offense for which he has been convicted, laboring under temporary insanity caused by intoxication, <u>then you may take such temporary insanity into consideration in mitigation of the penalty attached to the offense of capital murder</u>.

This instruction allowed the jury to consider as mitigating temporary insanity induced by intoxication, whether voluntary or not. Rogers did not object to this instruction at trial, and the state habeas judge refused to reach its merits for that reason. The Texas Court of Criminal Appeals affirmed this holding. The State points to the procedural bar and alternatively replies that

6

this contention seeks a new rule contrary to the limits upon federal habeas imposed by Teague v. Lane, 489 U.S. 288 (1989). The State then urges that Rogers failed to prove that he was intoxicated when he killed the police officer and that, in any event, the jury was able to give effect to any mitigating value of Rogers' evidence. This reply continues that intoxication had no mitigating value unless Rogers was unable to control his actions, that is, unless he was temporarily insane. Finally, the State urges that such evidence, if believed by the jury, could have been given effect in the jury's answer to the question whether Rogers' actions were "deliberate", as well as to the question whether he posed a continuing threat to society.

We are persuaded that Claim Two is procedurally barred and that Rogers has shown no legal reason to ignore that state rule. We do not reach the merits of the argument that the instruction denied Rogers his constitutionally secured right to have the jury consider all of his relevant mitigating evidence. We pause only to observe that it is not certain that this instruction improperly limited the potential mitigating value of Rogers' evidence that he was intoxicated when he murdered the police officer. First, the instruction has not denied the intoxication evidence all effect. The jury was allowed to consider evidence of voluntary intoxication as mitigating if it was persuaded that Rogers was so intoxicated that he did not know that what he was doing was wrong. This limitation is arguably consistent with the State's duty to give the jury full opportunity to give "a reasoned moral response to the

defendant's background, character and crime." <u>Penry</u>, 109 S. Ct. at 2952. The State can "structure" the jury's consideration of mitigating evidence. <u>Johnson v. Texas</u>, 125 L.Ed. 2d 290 (1993). Here, the jury was allowed to give effect to intoxication evidence but only at the defined level. The instruction's fit with <u>Johnson</u> and <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982), is uncertain, and we suggest no answer to that question today.

Second, this instruction simply does not fit the Texas scheme. This instruction is apt when the jury is the sentencing body, as it frequently is in non-capital cases. The jury here was asked the two questions about deliberateness and future dangerousness. The answer to these two questions decided the defendant's fate. The trial judge did not explicitly instruct the jury whether it could consider the evidence of intoxication in answering the two questions. It did instruct that the jury could consider all evidence submitted during both the guilt and punishment phases of the trial, and, significantly, counsel argued the weight the jury ought to accord to the intoxication evidence. Nonetheless, we cannot say with confidence how the jury put the instruction and the questions together. We are describing the uncertainty because it is the context in which the procedural bar was invoked. We do not reach the inquiry "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence," <u>Boyde v. California</u>, 110 S. Ct. 1190 (1990), or whether there exists a "reasonable likelihood that t[he] jurors would have deemed

themselves foreclosed from considering [the mitigating evidence]." Graham, 113 S. Ct. at 902. This notion that defense counsel was actually foreclosed from presenting credible voluntary intoxication evidence to the jury is also belied by his closing argument. Defense counsel argued that Rogers' acts were not deliberate because "he was on PCP." He pointed out to the jury that "[t]he court in this charge tells you that voluntary ingestion, in this instance of PCP, can be considered in mitigation." In sum, Claim Two, on the facts of this case, is problematic at best. The State's powerful interests in insisting upon a contemporaneous objection are palpable here, given this uncertainty that might have been corrected. Indeed, the reality is that defense counsel may not have objected to the instruction because it laid all the platform needed to argue his case with credibility.

Nor is the State's invoking of the contemporaneous objection rule put in doubt by its announced refusal to do so to bar Penry claims arising before Penry was decided. Penry made clear that seven years earlier, long before Rogers' trial, Eddings had held that "a sentencer may not be precluded from considering, and may not refuse to consider, any relevant mitigating evidence offered by the defendant as the basis for a sentence less than death." 492 U.S. at 318. Rogers contends that voluntary intoxication leaving him aware of right and wrong was mitigating but was excluded by the trial judge from the jury's consideration. This is not a Penry claim, which addresses the question whether particular mitigating evidence can find expression in the jury's answers to questions

9

asked in the sentencing phase.  In short, Roger's <u>Penry</u> and <u>Eddings</u> claims have common doctrinal sources but are different in ways directly relevant to our question today whether a procedural bar was properly invoked.  The refusal by the Texas Court of Criminal Appeals to insist on a contemporaneous objection to <u>Penry</u> errors in cases tried before <u>Penry</u> was announced rests on its doctrine of secured rights.  <u>Eddings</u>, as we have pointed out, established the principle now invoked against Rogers long before his trial.  We find no inconsistency in that court's application of the procedural bar to Rogers' second claim.

We grant a certificate of probable cause and affirm the judgment of the district court dismissing the petition for writ of habeas corpus.

AFFIRMED.